UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,            CASE NO. 07-cr-20365

                    Plaintiff,                    HON. THOMAS L. LUDINGTON
                                                  United States District Judge
v.

MICHAEL DUANE SORRELL,

                    Defendant.

---

### RESPONSE TO DEFENDANT'S MOTION FOR IMPOSITION OF A REDUCED SENTENCED PURSUANT TO THE FIRST STEP ACT OF 2018

---

Defendant Michael Duane Sorrell has filed a motion for a resentencing pursuant to Section 404 of the First Step Act of 2018, which made retroactive the portions of the Fair Sentencing Act of 2010 that lowered statutory penalties for certain offenses involving crack cocaine.  The Fair Sentencing Act, enacted on August 3, 2010, did not apply retroactively to defendants like Sorrell who were sentenced before that date. As explained below, the government submits that defendant is not eligible for relief under the First Step Act.  Further, defendant is not entitled to a full resentencing hearing.

## I.     The Original Sentence.

On July 25, 2007, a single-count indictment was returned against Sorrell charging him with conspiracy to distribute and possess with intent to distribute

more than 50 grams of cocaine base (crack cocaine).  (ECF No. 1).  On August 17, 2007, a penalty enhancement information was filed pursuant to 21 U.S.C. § 851 which increased defendant's statutory mandatory sentence to Life imprisonment.

The parties entered into a Rule 11 Plea Agreement which provided that defendant would plead guilty to the charge in the Indictment.  The parties stipulated that the count of conviction involved at least 500 grams of crack cocaine.  (ECF No. 17; PSR ¶ 6, 21).

Prior to sentencing, the government amended the notice of penalty enhancement pursuant to 21 U.S.C. § 851 to reflect only one prior felony drug conviction which decreased defendant's statutory sentence to 20 years to life, pursuant to 21 U.S.C. § 841(b)(1)(A). (ECF No. 18).  The statutory minimum term of supervised release was lowered to 10 years.

Because Sorrell had two prior qualifying convictions for controlled substance offenses, he was classified as a career offender under U.S.S.G. § 4B1.1, and his offense level was 37. With a three-level reduction for acceptance of responsibility, Sorrell's total offense level was 34 with a criminal history category VI, resulting in a guideline range of 262 to 327 months.  (PSR ¶ 29, 42, 63).

At the sentencing hearing on May 21, 2008, the Court adopted the guideline range in the presentence report and imposed a custodial sentence of 262 months to be followed by 10 years of supervised release.  (ECF No. 19).

II.     **Application of the First Step Act.**

The defendant is not eligible for relief under Section 404 of the First Step

Act, which authorizes retroactive application of the Fair Sentencing Act of 2010,

because the same statutory penalties applied to the defendant's offense both before

and after the Fair Sentencing Act. The Fair Sentencing Act increased the threshold

crack quantity for a Section 841(b)(1)(A) offense to 280 grams, but given that the

quantity involved in this case exceeds that amount (500 grams to 1.5 kilograms),

the statutory penalties remain the same.

The defendant claims, however, that he is eligible because the indictment

charged an offense involving 50 grams of cocaine base (crack cocaine), and under

the Fair Sentencing Act, the penalties for that quantity are lower: maximum of 40

years, with a mandatory minimum sentence of 5 years, increasing because of

defendant's prior felony drug conviction to a statutory mandatory minimum of 10

years and up to life under Section 841(b)(1)(B).[1]

---

[1] For offenders sentenced before the effective date of the Fair Sentencing
Act, August 3, 2010, § 841(b)(1)(A) applied to an offense involving 50 grams of
crack or more, and required a mandatory minimum sentence of 10 years'
imprisonment (increased if the defendant had one or two prior felony drug
convictions) and permitted a maximum sentence of life. Section 841(b)(1)(B)
applied to an offense involving 5 grams of crack or more, and required a
mandatory minimum sentence of 5 years' imprisonment (increased to 10 years if
the defendant had a prior felony drug conviction) and permitted a maximum
sentence of 40 years (increased to life if the defendant had a prior felony drug
conviction). Under the Fair Sentencing Act, the thresholds were changed to 280
grams under § 841(b)(1)(A) and 28 grams under § 841(b)(1)(B). Both before and

The government charged 50 grams of crack cocaine in the original indictment only because that was the pertinent statutory threshold at the time. Applying that artificial quantity now in this case would create a gross disparity with similarly situated offenders charged after the Fair Sentencing Act was adopted in 2010, defeating the plain Congressional intent in the First Step Act of assuring like treatment of like offenders. As will be explained, the First Step Act does not permit that result.

Pursuant to 18 U.S.C. § 3582(c), "[t]he court may not modify a term of imprisonment once it has been imposed except that (1) . . . (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." The relevant statute here—the First Step Act—does not permit relief in this case.

Section 404(b) of the First Step Act provides:

A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

---

after the Fair Sentencing Act, the government charged and proved only the threshold quantity required by the statute (*i.e.*, under § 841(b)(1)(A), 50 grams before the Act, and 280 grams after; or, under § 841(b)(1)(B), 5 grams before the Act, and 28 after). Once the threshold quantity is established by the jury's verdict or defendant's plea, the court then has discretion to impose a sentence within the applicable statutory maximum, and to find sentencing facts by a preponderance of the evidence, in accord with *United States v. Booker*, 543 U.S. 220 (2005).

Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(c) makes clear that any sentence reduction is discretionary, stating, "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

A straightforward reading of Section 404 calls for the court to make two sequential determinations: first, whether it may impose a reduced sentence, and second, if so, what sentence would have been appropriate had the Fair Sentencing Act been in effect at the time the defendant committed his crime. Here, the defendant's claim fails at both steps.

Section 404(b) authorizes a sentence reduction only if the court previously imposed a sentence for a "covered offense." A "covered offense," in turn, is a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." The statute thus keys eligibility not on the defendant's statute of conviction, but on the specific "violation" that the defendant "committed." And a "violation" qualifies as a "covered offense" only if the "statutory penalties for" that violation were "modified by sections 2 or 3 of the Fair Sentencing Act."

By referring to a "violation" that was "committed" on a particular date, Section 404(a) sensibly grounds the eligibility inquiry in the actual conduct involved in the defendant's violation, rather than the statute under which the defendant was convicted. In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985), for instance, the Supreme Court held in the context of 18 U.S.C. § 1964(c) that the term "violation" "refers only to a failure to adhere to legal requirements," not a criminal conviction. The Court explained that when Congress wishes to refer to "prior convictions, rather than prior criminal activity," it uses the term "conviction," not "violation." *Id.* at 489 n.7. And in *United States v. Hayes*, 555 U.S. 415 (2009), the Court held that a statute defining a prior conviction for a "misdemeanor crime of domestic violence" referred in part to the defendant's actual conduct, not the statutory elements of the crime, when it described the prior offense as one "*committed by* a current or former spouse, parent, or guardian." *Id.* at 426 (emphasis added) (quoting 18 U.S.C. § 921(a)(33)(A));[2] *cf. Nijhawan v.*

---

[2]  In the statute at issue in *Hayes*, the term "misdemeanor crime of domestic violence" was defined as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." The Court held that the domestic relation of the perpetrator need not be an element of the offense of conviction; rather, the government may prove as a factual matter that the person who "committed" the offense at issue fell within one of the described relationships.

*Holder*, 557 U.S. 29, 32 (2009) (holding that a statutory term describing a prior "offense" referred not to a generic crime but to the "particular circumstances in which an offender committed" that offense "on a particular occasion").

Here, Congress easily could have declared eligible "any defendant convicted under a statute for which the penalties were altered by the Fair Sentencing Act of 2010, so long as that defendant has not already been sentenced in accordance with that Act." Instead, Congress focused specifically on the "violation" that was "committed." Indeed, Congress's use of the word "committed" in Section 404(a) of the First Step Act points especially strongly to the particular facts of the case because Congress added a date-based qualifier: "that was committed before August 3, 2010." Thus, the inquiry into what counts as a "covered offense" necessarily turns on facts specific to the defendant's offense—when it was committed—and not merely the statutory definitions that appear in 21 U.S.C. § 841(b)(1).

Accordingly, Congress intended courts assessing eligibility to take a case-specific approach focusing on the actual violation at issue. Courts therefore should not blind themselves to the actual quantity of crack involved in defendants' offenses—especially if the defendant admitted or did not dispute those quantities. If, as is the case here, the defendant's "violation" involved a quantity of crack that would have triggered the same penalty after enactment of the Fair Sentencing Act, then that defendant's "violation" is not one for which the statutory penalties were

modified by the Fair Sentencing Act. Accordingly, the court did not impose a sentence for a "covered offense," and the defendant is ineligible for a reduced sentence.

The defendant's contrary reading not only undermines the statutory text, but also conflicts with Congress's manifest intent, as it would lead to profoundly unfair and illogical disparities between defendants charged before and after the Fair Sentencing Act. There is no dispute that Congress, in enacting Section 404 of the First Step Act in 2018, was concerned about a particular class of cocaine base defendants: those whose statutory penalties would have been lower but for the fortuity that they were sentenced before August 3, 2010, and therefore could not take advantage of the Fair Sentencing Act. *See Dorsey v. United States*, 567 U.S. 260 (2012). For instance, if a crime involved 200 grams of crack, and the defendant was sentenced under Section 841(b)(1)(A) before August 3, 2010, a court should consider whether to grant a reduced sentence, as the Fair Sentencing Act places the 200-gram offense in Section 841(b)(1)(B). This relief puts the offender in an identical position to those sentenced after August 3, 2010. If, however, the original crime involved at least 280 grams of crack, the defendant's violation would have triggered the same Section 841(b)(1)(A) penalties both before and after the Fair Sentencing Act. If such a defendant had been sentenced after the Fair Sentencing Act, all agree that he could not obtain a discretionary

reduction of sentence today. But under the defense approach, had that same defendant been sentenced before the Fair Sentencing Act took effect, he would now be entitled to a discretionary reduction of sentence. Nothing in the text or legislative history of the First Step Act suggests that Congress would have countenanced this asymmetry, which is entirely unfair to defendants sentenced after enactment of the Fair Sentencing Act.

This case illustrates the point. As explained above, the defendant's offense indisputably involved more than 280 grams of crack, and he has a prior drug felony which calls for a statutory sentence of at least 20 years and up to Life under the drug trafficking statute. Every crack offender charged with and convicted of such a crime since August 3, 2010, has been sentenced under that same provision. If the defendant here were to receive a sentence reduction based on the fiction that his offense involved only 50 grams of crack, his statutory sentencing exposure would be lower than that faced by everyone who was charged with the same crime after August 3, 2010. The purpose of the First Step Act was to reconcile the disparity between those sentenced before the Act and those sentenced afterwards. It would turn that goal on its head to instead afford greater relief, untethered to any actual facts, to earlier offenders.

To make matters worse, under the defense approach, nearly *every* defendant charged under Sections 841(b)(1)(A) or (b)(1)(B) before the Fair Sentencing Act

would now be eligible for a sentence reduction. Before the Fair Sentencing Act, there was no reason for any prosecutor to allege in an indictment more than 50 grams for a subsection A offense or more than 5 grams for a subsection B offense. Under the Fair Sentencing Act, however, those specific quantities—50 grams and 5 grams—are treated less severely. Thus, under the defense view, nearly every defendant charged under those statutes would be treated differently from identically situated defendants charged after the Fair Sentencing Act became effective, even if their violations involved crack quantities substantially exceeding the new statutory thresholds. The defendant does not, and cannot, offer any justification for the mass disparity he seeks, or any explanation of why Congress would have intended such an odd result.

Although not specifically addressed in his brief, defendant may suggest that denial of eligibility resting on the factual determinations made at the original sentencing, would violate the rulings in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), that any fact increasing either a statutory maximum or mandatory minimum penalty must be charged in an indictment and found by a jury or admitted by the defendant.[3] But these cases do

---

[3]  In fact, *Alleyne* applied to very few, if any, defendants who might benefit from the First Step Act. Any defendant sentenced before August 3, 2010, and whose conviction became final before *Alleyne* was decided on June 17, 2013, was subject to the rule of *Harris v. United States*, 536 U.S. 545 (2002), that a jury need not find a quantity increasing a mandatory minimum sentence, a decision later overruled in *Alleyne.*

10

not apply here, because the First Step Act authorizes a court only to "reduce" a sentence, not increase it, and further makes clear that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c).

The situation matches that in *Dillon v. United States,* 560 U.S. 817 (2010). There, the Court considered a motion for sentencing reduction under 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) allows a court to reduce a sentence, in its discretion, upon adoption of a sentencing guideline amendment designated by the Sentencing Commission as retroactive. The Commission's policy statement implementing Section 3582(c)(2) decreed that a court could not, except in limited, specified circumstances, reduce a sentence below the range set by the amended guideline provision. Defendants objected that a further reduction should be allowed under *Booker v. United States*, 543 U.S. 220 (2005), which rendered the guidelines advisory to remedy a violation of *Apprendi.*

The Supreme Court disagreed. It stated that "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding." Rather, it allows courts to "reduce" a sentence of imprisonment in limited circumstances identified by the Sentencing Commission. The Court explained:

> Given the limited scope and purpose of § 3582(c)(2), we conclude that proceedings under that section do not implicate the interests identified in *Booker*. Notably, the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled. We are aware of no

11

constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather, § 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.

Viewed that way, proceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range.

*Id.* at 828. This reasoning applies with full force here. The retroactive application of the Fair Sentencing Act is not constitutionally compelled, but rather is an act of Congressional lenity. That is because, as an ordinary rule and absent a Congressional declaration, new statutory provisions do not abrogate prior penalties. *See* 1 U.S.C. § 109. The First Step Act solely calls for the court to determine whether the statutory penalties would have been different based on the "violation" the defendant "committed," and if so, exercise discretion in determining whether to reduce the sentence.

Further, *Dillon* observed, "[i]t is also notable that the provision applies only to a limited class of prisoners—namely, those whose sentence was based on a sentencing range subsequently lowered by the Commission. Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon,* 560 U.S. at 825-26.

12

Here, the legislation at issue uses precisely the same term as that seen in Section 3582(c)(2), providing authorization to "reduce" a sentence, not reimpose it. Further, as in the Section 3582(c)(2) context, the Act applies only to a narrow set of offenders, *i.e.*, those who committed crack cocaine offenses and were sentenced before August 3, 2010. And the Act expressly states that the court is not required to reduce any sentence.[4]

---

[4] Section 3582(c)(2), addressed in *Dillon*, states that "the court may *reduce* the term of imprisonment." Section 404(b) of the First Step Act states that the court may "*impose a reduced sentence*," while Section 404(c) states: "No court shall entertain a motion made under this section to *reduce* a sentence if the sentence was previously imposed or previously *reduced* in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to *reduce* the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to *reduce* any sentence pursuant to this section." The terminology of the First Step Act follows that of Section 3582(c)(2).

Yet defendant argue that the singular use of the term "impose a reduced sentence" in Section 404(b) mandates a *de novo* resentencing. This argument is unpersuasive. As one court observed, "[t]he First Step Act's use of the word 'impose' must be read in context. . . . The First Step Act authorizes a court to 'impose a reduced sentence,' and otherwise refers to a proceeding to 'reduce' a sentence. . . . The First Step Act does not call for a full or plenary resentencing." *United States v. Potts*, 2019 WL 1059837, at *3 (S.D. Fla. Mar. 6, 2019). Indeed, in discussing sentence reductions under Section 3582(c)(2)—which are not *de novo* resentencings—the Supreme Court has freely used the word "impose" in relation to the new, lower sentence that results from applying the retroactive amendment. *See, e.g.*, *Dillon*, 560 U.S. at 827 ("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range."). Nothing in the plain meaning of the word "impose" precludes using that word to describe a court's action in reducing a

13

Finally, the *Dillon* Court added:

> This understanding of § 3582(c)(2) as a narrow exception to the rule of
> finality finds further support outside the statute. Federal Rule of Criminal
> Procedure 43 requires that a defendant be present at "sentencing," *see* Rule
> 43(a)(3), but it excludes from that requirement proceedings that "involv[e]
> the correction or reduction of sentence under Rule 35 or 18 U.S.C.
> § 3582(c)," Rule 43(b)(4). Like § 3582(c)(2), Rule 35 delineates a limited
> set of circumstances in which a sentence may be corrected or reduced.
> Specifically, it authorizes a court to "correct a sentence that resulted from
> arithmetical, technical, or other clear error" within 14 days after sentencing,
> Rule 35(a), and it authorizes a reduction for substantial assistance on the
> Government's motion, Rule 35(b). Rule 43 therefore sets the proceedings
> authorized by § 3582(c)(2) and Rule 35 apart from other sentencing
> proceedings.

*Dillon*, 560 U.S. at 827-28. Rule 43 by its term applies to *all* motions under

Section 3582, not just motions under Section 3582(c)(2) based on retroactive

guideline amendments. Rule 43 therefore applies here, where the sentencing

reduction is authorized by Section 3582(c)(1)(B), and thus the Supreme Court's

---

sentence under Section 3582(c), which, consistent with *Dillon*, is not subject to the
rules of *Apprendi* and *Alleyne*.

explanation applies here too.[5] These proceedings, as in *Dillon*, do not warrant the application of *Apprendi* or *Alleyne*.[6]

Given the holding in *Dillon*, every appellate court to address the issue has held that a court, when determining whether a defendant is eligible for a sentencing reduction under Section 3582(c)(2) based on a retroactive amendment to the narcotics sentencing guideline, which is driven by drug quantity, may make factual findings based on the original record to determine whether the offense involved a quantity that results in the same sentencing range under the amended guideline and therefore renders the defendant ineligible for relief. *See, e.g.*, *United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014); *United States v. Peters*, 843 F.3d 572, 578 (4th Cir. 2016); *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012); *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *United States v. Anderson*, 707

---

[5] Courts are unanimous in ruling that Rule 43 applies to motions under Section 404 of the First Step Act and therefore no hearing or plenary resentencing proceeding is required. *See, e.g.*, *United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *United States v. Glover*, 2019 WL 1924706, at *9-10 (S.D. Fla. May 1, 2019); *United States v. Kamber*, 2019 WL 399935, *2 (S.D. Ill. Jan. 31, 2019); *United States v. Perkins*, 2019 WL 1578367, at *3 (N.D. Iowa Apr. 3, 2019); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Shelton*, 2019 WL 1598921, at *2 (D.S.C. Apr. 15, 2019); *United States v. Coleman*, 2019 WL 1877229, at *8 (E.D. Wis. Apr. 26, 2019).

[6] The *Dillon* Court further stated: "The substantial role Congress gave the Commission with respect to sentence-modification proceedings further supports this conclusion." *Dillon*, 560 U.S. at 826. That feature is absent here, but the remainder of the *Dillon* Court's statutory analysis fully supports the conclusion suggested here, as explained above.

F.3d 973, 975 (8th Cir. 2013); *United States v. Mercado-Moreno*, 869 F.3d 942, 953–55 (9th Cir. 2017); *United States v. Battle*, 706 F.3d 1313, 1319 (10th Cir. 2013); *United States v. Hamilton*, 715 F.3d 328, 340 (11th Cir. 2013); *United States v. Wyche,* 741 F.3d 1284, 1293 (D.C. Cir. 2014). In reasoning that is directly applicable to the present situation as well, the Ninth Circuit explained:

> Typically, in those cases, neither the court nor the parties anticipate a future Guidelines amendment that will move the line and require further fact-finding to determine the defendant's eligibility for a sentence reduction under § 3582(c)(2).
>
> In those cases where a sentencing court's quantity finding is ambiguous or incomplete, a district court may need to identify the quantity attributable to the defendant with more precision to compare it against the revised drug quantity threshold under the relevant Guidelines amendment. The Supreme Court indicated that such fact-finding was permissible in *Dillon*. *See* 560 U.S. at 828-29 (stating that "facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment").

*Mercado-Moreno*, 869 F.3d at 954. The same fact-finding is necessary here to compare the drug quantity attributable to the defendant against the revised drug quantity thresholds under the Fair Sentencing Act, and is not restricted by *Apprendi* and *Alleyne*. In this case, however, the fact-finding is easy: It is undisputed that the defendant's offense involved at least 500 grams of crack.

It also bears emphasis that any reduction in sentence under the First Step Act must comport with Section 3582(c)(1)(B), which states, "[t]he court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly

permitted by statute . . . ." The First Step Act allows imposition of a reduced sentence as if the Fair Sentencing Act "were in effect at the time the covered offense was committed." It does not "expressly" authorize the retroactive application of *Apprendi* and *Alleyne*, which are inapplicable for this reason as well. Courts are unanimous in holding that *Apprendi*[7] and *Alleyne*[8] do not apply

------

[7] *Apprendi* does not apply retroactively on collateral review. *Love v. Menifee,* 333 F.3d 69, 73 (2d Cir. 2003); *United States v. Swinton*, 333 F.3d 481 (3d Cir. 2003); *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001); *United States v. Brown*, 305 F.3d 304, 307-10 (5th Cir. 2002); *Goode v. United States*, 305 F.3d 378, 382 85 (6th Cir. 2002); *Curtis v. United States*, 294 F.3d 841, 842 44 (7th Cir. 2002); *United States v. Moss*, 252 F.3d 993, 997 1001 (8th Cir. 2001); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 667-71 (9th Cir. 2002); *United States v. Mora*, 293 F.3d 1213, 1218-19 (10th Cir. 2002); *McCoy v. United States*, 266 F.3d 1245, 1256-58 (11th Cir. 2001).

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), consistent with all of these decisions, the Supreme Court held that *Ring v. Arizona*, 536 U.S. 584 (2002), which, in reliance on *Apprendi*, held that aggravating circumstances in a death penalty prosecution must be found by a jury rather than a judge, does not apply retroactively on collateral review. The Court explained that judicial factfinding might actually be more accurate, and in any event does not so "seriously diminish" accuracy that there is an "'impermissibly large risk'" of punishing conduct the law does not reach. 542 U.S. at 355-56 (citations omitted).

[8] *Alleyne* does not apply retroactively on collateral review. *Butterworth v. United States*, 775 F.3d 459, 465-468 & n.4 (1st Cir. 2015); *United States v. Redd*, 735 F.3d 88, 91-92 (2d Cir. 2013) (per curiam); *United States v. Reyes*, 755 F.3d 210, 212-13 (3d Cir. 2014); *United States v. Stewart*, 540 F. App'x 171 (4th Cir. 2013) (per curiam) (unpublished); *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013) (per curiam); *In re Mazzio*, 756 F.3d 487, 489-91 (6th Cir. 2014); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *Walker v. United States*, 810 F.3d 568, 575 (8th Cir. 2016); *Hughes v. United States*, 770 F.3d 814, 817-19 (9th Cir. 2014); *In re Payne*, 733 F.3d 1027, 1029-30 (10th Cir. 2013) (per curiam); *United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014).

retroactively to undermine an otherwise final judgment, and Congress did not expressly state otherwise here. It did not decree that only this small set of offenders sentenced before August 3, 2010—those who committed crack cocaine offenses for which the statutory sentencing ranges have changed—may receive consideration under *Apprendi* and *Alleyne*, while no one else may.[9]

This Court therefore can and should determine that defendant's violation involved quantities of crack cocaine that would have triggered the same penalties had the Fair Sentencing Act been in effect. Further, defendant herein admits that the same sentencing range would have applied, and therefore defendant's sentence would not have changed. Accordingly, defendant is not eligible for relief.

While the district courts have not uniformly adopted the government's approach (or any other approach, for that matter), several courts have persuasively approved the position set forth here. Judge Hinkle, for example, in a lengthy opinion in *United States v. Blocker*, 2019 WL 2051957 (N.D. Fla. Apr. 25, 2019), observed that the defense position "would not eliminate disparity but instead would introduce enormous disparity in the opposite direction, giving earlier crack

---

[9] In contrast, where Congress authorizes *de novo* resentencing, it states that authority explicitly. *See, e.g.*, 18 U.S.C. § 3742(f) and (g) (resentencings on remand following direct appeal); 28 U.S.C. § 2255(b) (resentencings in habeas context).

defendants a lower penalty range not available to later crack defendants." *Id.* at *5.

The court identified another absurdity in the defense position:

> Similarly, the Fair Sentencing Act was intended to lower the sentencing disparity between crack and powder, changing the 100-to-1 drug-amount ratio to approximately 18-to-1. The First Step Act was intended to give that same benefit to earlier crack defendants. The offense-controls theory [determining eligibility based on actual conduct] accomplishes that result. But if sentences for crack offenses are now lowered based on the indictment-controls theory [looking only to the charge in the indictment], an enormous disparity will be created in the opposite direction. Many defendants who committed crack offenses prior to adoption of the Fair Sentencing Act will be subject to lower penalty ranges than defendants who committed offenses involving the same amount of powder.
>
> Consider, for example, two defendants, one who conspired in 2007 to distribute 5 kilograms of powder, and the other who conspired to distribute 5 kilograms of crack, both with two prior felony drug convictions. In 2007, before adoption of the Fair Sentencing Act, both would have been subject to mandatory life sentences—the powder defendant because the offense involved 5 kilograms or more, and the crack defendant because the offense involved 50 grams or more. The indictments would have tracked the statute, so the powder defendant's indictment would have charged 5 kilograms or more of powder, and the crack defendant's indictment would have charged 50 grams or more of crack. If both were convicted, both would have faced mandatory life sentences.
>
> Under the offense-controls theory, nothing would change. Both defendants would still be subject to mandatory life sentences, just as two defendants who committed the same offenses today would be subject to mandatory life sentences.[10] There is no reason to believe Congress intended any different result.

---

[10]   Actually, under Section 401 of the First Step Act, the mandatory penalty in this hypothetical would be 25 years for offenders sentenced after December 21, 2018. But that provision does not apply retroactively to anyone sentenced earlier, and thus does not detract from the force of Judge Hinkle's explanation.

> But under the indictment-controls theory, the crack defendant would now face a minimum of only 10 years, not life, because he would be treated as having committed an offense involving only 50 grams of crack—not 280 or more as required to trigger the life sentence. This would be the result even though the offense actually involved 5 kilograms of crack and the government could prove it. The powder defendant, in contrast, would continue to serve the mandatory life sentence, because nothing in the Fair Sentencing Act or First Step Act allows a sentence reduction for a defendant whose offense involved only powder. Congress could not have intended to treat crack defendants this much more favorably than powder defendants.

*Id.* at *6; *see also United States v. Russo*, 2019 WL 1277507, at *1 (D. Neb. Mar. 20, 2019) ("[T]he Court cannot conclude that the First Step Act anticipates a full re-sentencing with application of laws and Guidelines that have changed since a defendant's original sentencing, other than the retroactive application of the reduced penalties for crack cocaine set out in the Fair Sentencing Act. If the Court were to engage in such a re-sentencing, applying other laws and Guidelines that have been changed since Russo's original sentencing, it would work an injustice to offenders sentenced in the past who did not have a crack cocaine conviction qualifying for sentence reduction pursuant to the Fair Sentencing Act of 2010.").

Several other courts thus far have agreed that eligibility is determined based on the actual quantity involved in the offense. *See United States v. Haynes*, 2019 WL 1430125, at *2 (D. Neb. Mar. 29, 2019); *United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *cf. United States v. Glover*, 2019 WL 1924706, at *7 (S.D. Fla. May 1, 2019) (holding that *Apprendi* does not apply to a resentencing under Section 404).

20

A fair number of other courts have disagreed, and determined eligibility based only on the pre-Fair Sentencing Act quantity charged in the indictment. *See United States v. Allen*, 2019 WL 1877072, at *3 (D. Conn. Apr. 26, 2019); *United States v. Dodd*, 2019 WL 1529516, at *2-3 (S.D. Iowa Apr. 9, 2019); *United States v. Broussard*, 2019 U.S. Dist. LEXIS 72844, at *5-6 (D. Minn. Apr. 19, 2019); *United States v. Simons*, 2019 WL 1760840, *6 (E.D.N.Y. Apr. 22, 2019); *United States v. Martin*, 2019 WL 1558817, *3 (E.D.N.Y. Apr. 10, 2019); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Pugh*, 2019 WL 1331684, at *3 (N.D. Ohio Mar. 25, 2019); *United States v. Pierre*, 2019 WL 1495123, at *5 (D.R.I. Apr. 5, 2019); *United States v. Stanback,* 2019 WL 1976445, at *3 (W.D. Va. May 2, 2019); *United States v. Laguerre*, 2019 WL 861417, at *3 (W.D. Va. Feb. 22, 2019); *United States v. Glore*, 2019 WL 1060838, at *6 (E.D. Wis. Mar. 6, 2019); *see also United States v. Francis*, 2019 WL 1983254, *2 (S.D. Ala. May 3, 2019) (declining to look to original findings to determine statutory penalties, but relying on original findings to assess amended guideline range).

Most of these decisions, however, present little or no reasoning, and the few that do are unpersuasive. For instance, in a statement relied upon by many courts, the district court in *Davis* simply declared reliance on the "plain language" of the First Step Act, adding, "it is the statute of conviction, not actual conduct, that

controls eligibility under the First Step Act," without any assessment of the statutory analysis presented here. *Davis*, 2019 WL 1054554, at \*2-3. Indeed, none of the adverse decisions cited above address in any respect the dispositive statutory language in both the First Step Act and in Section 3582(c)(1)(B) discussed here.

In *Allen*, the court focused on "the purpose underlying the First Step Act," stating "that Congress wanted to further the Fair Sentencing Act's objective of mitigating the effects of a sentencing scheme that had a racially disparate impact. *See Dorsey*, 567 U.S. at 268. Given this remedial purpose, the First Step Act should be construed to provide courts with discretion to reduce a sentence when the statute the defendant violated has been modified by the Fair Sentencing Act to provide less severe penalties." *Allen*, 2019 WL 1877072, at \*3. But it in no way advances the remedial purposes of the Act to afford relief to a defendant that is greater than he would have received had his sentence been imposed after enactment of the Fair Sentencing Act. Rather, it is the government's position here that advocates and urges like treatment of like offenders, consistent with the Congressional purpose, with relief afforded to those whose statutory sentencing ranges were in fact lowered by the Fair Sentencing Act, and denied to those whose ranges are unaffected.

*Allen* also suggested that *Apprendi* and *Alleyne* should apply, stating, "Congress legislates in the context provided by constitutional principles." *Id.* at \*4.

Likewise, *Stanback* stated, "Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so." 2019 WL 1976445, at *3. But as explained above, under the constitutional landscape in recent years, *Apprendi* and *Alleyne* do not apply retroactively to offenders whose judgments were final before those decisions were announced. It is the denial of relief here—like the denial of relief under *Booker* that the Supreme Court affirmed in *Dillon*—that is in fact consistent with recent law. As explained above, it should not be concluded that Congress meant to afford such retroactive relief to a limited set of crack offenders that is not extended to anyone else.

In *Pierre*, the district court took another tack, stating:

> The Government's approach, while reasonable, is problematic in several ways. First, it effectively requires the Court to employ a prosecutor-friendly "way-back machine" to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect. For example, here, the Court is not confident that a well-counseled defendant caught with 28.77 grams of crack cocaine and a reasonable prosecutor from this District would have reached a plea deal of 28 grams or more of crack cocaine, thereby triggering the mandatory minimum by a mere .77 grams of crack cocaine. Indeed, it seems likely in this Court's experience the parties would have agreed to a plea to a lower quantity.

*Pierre*, 2019 WL 1495123, at *5. In the *Blocker*, the court effectively rebutted that view, stating:

> Had the indictment charged the higher amount of crack—280 grams—on count one, it might or might not have affected Mr. Blocker's decision to plead guilty. The government would have relied on the same drug-amount

23

evidence it relied on at that time and that it now relies on in response to the motion to reduce the sentence. Mr. Blocker might or might not have admitted that the conspiracy involved at least 280 grams of crack. Had he denied it, the government might or might not have been able to prove it beyond a reasonable doubt.

It may not be possible now, after the fact, to resolve with certainty the question about what would have happened. But courts routinely resolve issues on which certainty is elusive, including issues like this one. Thus, for example, courts routinely must decide what would have happened when addressing ineffective-assistance-of-counsel claims on motions under 28 U.S.C. § 2255 or on petitions for writs of habeas corpus under 28 U.S.C. § 2254.

*United States v. Blocker*, 2019 WL 2051957, at *4 (N.D. Fla. Apr. 25, 2019). In the present case, there is no uncertainty.

Finally, courts have cited the rule of lenity. *See Allen*, 2019 WL 1877072, at *3; *Pierre*, 2019 WL 1495123, at *5. But "[a]pplication of the rule of lenity requires more than a difficult interpretative question. Rather, '[t]o invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute.'" *United States v. Flemming*, 617 F.3d 252, 270 (3d Cir. 2010), citing *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (internal quotation marks and citation omitted). The rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990). For all the reasons stated earlier, there is no such grievous ambiguity in the First Step Act. To the contrary, all tools of

statutory interpretation point to the conclusion that an offender whose crack quantity supports the same penalty range under the Fair Sentencing Act that was applied at the original sentencing proceeding is not eligible for relief.

As a final note, even if this Court disagrees with the government's legal assessment of eligibility, it should deny relief in the exercise of its discretion. Given the known quantity involved in the offense, defendant would have received the same sentence if the Fair Sentencing Act had been in effect at the time of the original sentencing and the government had presented its case subject to the Fair Sentencing Act's requirements.  The defendant should not receive a windfall not available to defendants prosecuted for the same conduct under the Fair Sentencing Act, who received sentences based on quantity determinations keyed to the thresholds set forth in that Act. A contrary result here would offend "the need to avoid unwarranted sentencing disparities among" similarly situated offenders under 18 U.S.C. § 3553(a)(6), and the need for a sentence to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense" under Section 3553(a)(2)(A). *See Dorsey*, 567 U.S. at 276-79 (expressing the importance of consistency in sentencing similarly situated offenders when determining the retroactive application of a statutory amendment).

## II.     Advisory Sentencing Guideline Range

As defendant is a career offender, Section 4B1.1 sets an offense level of 37 for those offenses punishable by a statutory maximum sentence of life, an offense level of 34 for those offenses punishable by a maximum sentence of at least 25 years, and an offense level of 32 for those offenses punishable by a maximum sentence of at least 20 but less than 25 years.  If the Court were to determine that the statutory maximum penalty for Sorrell, considering his prior felony drug offense charged under Section 851, as the defense suggests, is 10 years to Life under Section 841(b)(1)(B) after the Fair Sentencing Act his status as a career offender and sentencing guideline range would not change.  Defendant concedes that his advisory sentencing guideline both before and after the First Step Act would remain 262 to 327 months.  (ECF No. 29 at p. 2).

Section 404(c) of the Act makes clear that a sentence reduction is discretionary. *See* First Step Act of 2018, Pub. L. No. 115-391, § 404(c), 132 Stat. 5194, 5222 (2018) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").  In determining whether to exercise its discretion and reduce a sentence of a qualifying defendant under the Act, a court should consider the sentencing factors set forth in Section 3553(a). In addition, under *Pepper v. United States*, 562 U.S. 476 (2011), a court may consider post-

offense conduct, either positive or negative, in assessing whether to adjust a previously imposed sentence.

The Court should deny defendant relief because defendant would have received the same sentence under the Fair Sentencing Act. *United States v. Logan*, 2019 WL 498519 (D. Kan. Feb. 8, 2019); *United States v. McKinney*, 2019 WL 2053998 (D. Kan. May 9, 2019); *United States v. Fisher*, 2019 WL 1320047 (E.D. Ky. Mar. 22, 2019) (although the mandatory minimum is no longer 20 years, the statutory maximum remains life, the career offender guideline range is therefore unchanged, and the sentencing factors support the original sentence); *United States v. Caldwell*, 2019 WL 1923908, at *1 (N.D. Ohio Apr. 30, 2019); *United States v. Jackson*, 2019 WL 1601492, at *3 (W.D. Va. Apr. 15, 2019).

In this case, after considering all of the 3553(a) factors, this Court determined that a low-end guideline sentence was appropriate. The Court at sentencing considered all the factors set forth in 18 U.S.C. § 3553 and specifically noted defendant's "repeated criminal conduct and felony drug behavior" when imposing a guideline sentence. (ECF No. 19 Statement of Reasons). Defendant's sentence herein was driven not so much by the evolving assessment of the severity of crack offenses, but instead by his status as a career offender who has repeatedly been involved in the criminal justice system. When creating the Sentencing Guidelines, Congress directed the Sentencing Commission to "assure that the

guidelines specify a sentence to a term of imprisonment at or near the maximum

term authorized" for a career offender such as Cannon. 28 U.S.C. § 994(h). That

mandate continues to apply.  See generally, *United States v. Ramseur*, 2019 WL

1575627 (E.D. Ky. April 11, 2019); *United States v. Holloway*, 2019 WL 691774

(E.D. Ky. February 19, 2019); *United States v. Caldwell,* 2019 WL 1923908 (N.D.

Ohio Apr. 30, 2019).

      This Court should exercise its discretion and deny Sorrell's request for a

sentence reduction.

### IV. Resentencing Hearing

      Based on the application of the Fair Sentencing Act, defendant concedes that

his overall sentencing guideline range is not impacted.  Even so, he moves this

Court for a full resentencing under the First Step Act.  However, as set forth below,

defendant is not entitled to a plenary resentencing hearing.

      If eligible, a sentencing reduction in this matter would be authorized under

Section 404 of the First Step Act, and by 18 U.S.C. § 3582(c)(1)(B), which states:

"The court may not modify a term of imprisonment once it has been imposed

except that . . . the court may modify an imposed term of imprisonment to the

extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules

of Criminal Procedure." Rule 43(b)(4) of the Federal Rules of Criminal Procedure

states that a defendant need not be present where "[t]he proceeding involves the

correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." In

*Dillon v. United States,* 560 U.S. 817 (2010), the Supreme Court confirmed that

sentencing reduction proceedings stand "as a narrow exception to the rule of

finality" and accordingly Rule 43, which "requires that a defendant be present at

'sentencing,' *see* Rule 43(a)(3), . . . excludes from that requirement proceedings

that 'involv[e] the correction or reduction of sentence under Rule 35 or 18 U.S.C. §

3582(c),' Rule 43(b)(4)." 560 U.S. at 827-28.

The First Step Act however, does not call for a plenary resentencing

proceeding. Section 404(b) provides that the court may "impose a reduced

sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in

effect at the time the covered offense was committed."  Section 2 of the Fair

Sentencing Act increased the amount of crack cocaine necessary to invoke

statutory mandatory minimum and maximum sentences under 21 U.S.C § 841 and

Section 3 eliminated the mandatory minimum sentence for simple possession of

crack cocaine.  This provision does not authorize a plenary resentencing.

In analogous circumstances, in *Dillon*, the Supreme Court held that a

reduction of sentence under 18 U.S.C. § 3582(c)(2), based on a guideline

amendment declared retroactive by the Sentencing Commission, does not involve a

plenary resentencing, but only application of the new guideline range as dictated

by the Commission. In the provision addressed in *Dillon*, the statutory language

29

allowed the court to "reduce" a term of imprisonment based on a retroactively

applicable amendment. The Supreme Court emphasized that term, and observed,

"[i]t is also notable that the provision applies only to a limited class of prisoners—

namely, those whose sentence was based on a sentencing range subsequently

lowered by the Commission." The Court concluded, "Section 3582(c)(2)'s text,

together with its narrow scope, shows that Congress intended to authorize only a

limited adjustment to an otherwise final sentence and not a plenary resentencing

proceeding." *Dillon*, 560 U.S. at 825-26. The Court therefore decreed that a

sentencing court considering application of a reduced guideline range should not

reconsider any other aspect of the sentencing decision. *Id.* at 831.

Although the First Step Act does not incorporate Section 3582(c)(2), the

Court's reasoning in *Dillon* strongly supports construing the Act to authorize a

similarly curtailed sentencing proceeding. Section 404(b) of the First Step Act

authorizes the court to "impose a *reduced* sentence," using the same term that

appears in Section 3582(c)(2); it does not permit "further sentencing" or a

"resentenc[ing]." *See Dillon*, 560 U.S. at 825 (quoting 18 U.S.C. § 3742(f)–(g)).

Likewise, the First Step Act authorizes the court to impose a reduced sentence "as

if sections 2 and 3 of the Fair Sentencing Act of 2010 * * * were in effect at the

time the covered offense was committed." This provision, as well as the absence of

any other concerning the substantive scope of the proceeding, indicates that

Congress contemplated "only a limited adjustment to an otherwise final sentence." *Id.* at 826. And finally, like Section 3582(c)(2), the First Step Act applies only to a limited set of defendants: those who committed an offense before August 3, 2010, and who stand to benefit from the threshold quantity changes in the Fair Sentencing Act. Accordingly, Section 404(b), like Section 3582(c)(2), is properly understood not to authorize a plenary resentencing.

Several district courts to address these issues have agreed that no plenary resentencing is warranted, that original sentencing determinations should not be reconsidered, and a hearing is not required. *See, e.g., United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019) (court rejected defendant's claim that he was entitled to reconsideration of career offender status holding that "[n]either the Fair Sentencing Act nor the First Step Act 'expressly' provide for a full or plenary resentencing or for a reconsideration of original sentencing determinations"); *United States v. Glover*, 2019 WL 1562833, at *7-10 (S.D. Fla. Apr. 11, 2019) ("nothing in the plain language" of the First Step Act authorizes a full resentencing); *United States v. Kamber*, 2019 WL 399935, *2 (S.D. Ill. Jan. 31, 2019); *United States v. Perkins*, 2019 WL 1578367, at *3 (N.D. Iowa Apr. 3, 2019) (defendant's request for formal resentencing denied as no hearing or presence of defendant not required); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (First Step Act contemplated only a recalculation of

the guidelines and not a plenary resentencing); *United States v. Shelton*, 2019 WL 1598921, at \*2 (D.S.C. Apr. 15, 2019) (defendant not entitled to full resentencing); *United States v. Glore,* 2019 WL 1761581 (E.D. Wis. Apr. 22, 2019) (court is not authorized to change sentencing judge's conclusion that defendant qualified as a career offender); *United States v. Lawson*, 2019 WL 1959490 (N.D. Ohio May 2, 2019) (defendant is not entitled to a resentencing or application of other laws and guidelines that have changed since his original sentence).

A district judge in Nebraska appropriately summarized this issue as follows:

> the Court cannot conclude that the First Step Act anticipates a full re-sentencing with application of laws and Guidelines that have changed since a defendant's original sentencing, other than the retroactive application of the reduced penalties for crack cocaine set out in the Fair Sentencing Act. If the Court were to engage in such a re-sentencing, applying other laws and Guidelines that have been changed since Russo's original sentencing, it would work an injustice to offenders sentenced in the past who did not have a crack cocaine conviction qualifying for sentence reduction pursuant to the Fair Sentencing Act of 2010.

> The Court also finds persuasive the Government's argument that a reduction of sentence pursuant to the First Step Act is analogous to a reduction of sentence under 18 U.S.C. § 3582(c)(2), based on a retroactive Guideline amendment, which does not require plenary resentencing. *See Dillon v. United States*, 560 U.S. 817, 825-26 (2010).

*United States v. Russo*, 2019 WL 1277507 (D. Neb. Mar. 20, 2019).

Because the proceedings here are limited to a recalculation of defendant's sentencing guideline range and defendant admits that the advisory range does not change, defendant's request for a sentencing hearing should be denied.

## V.    Conclusion

Defendant, is not eligible for relief under the First Step Act.  Even if the court were to find defendant was eligible for relief the court should exercise its discretion and decline to reduce defendant's sentence.  Defendant is not entitled to a plenary sentencing hearing.  For these reasons, defendant's motion should be denied without a hearing.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

Dated:   May 29, 2019          s/ NANCY A. ABRAHAM   P42060
Assistant United States Attorney
600 Church Street, 2nd Floor
Flint, Michigan 48502
810-766-5034

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Joan E. Morgan

Dated: May 29, 2019                    s/Kristi Bashaw
United States Attorney's Office